Cameron E. BERRY,
Plaintiff–Appellant,

v.

Gerson HOLLANDER, Ted Galey, Perry Norman, W. Paul Nichol, and A.B. Carr, Defendants–Appellees.

No. 88–4031.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 10, 1990.

Decided Feb. 1, 1991.

Bill Sharp, Morrow, Monks & Sharp, Eugene, Or., for plaintiff-appellant.

James L. Sutherland, Asst. U.S. Atty., Eugene, Or., for defendants-appellees.

Before CANBY and TROTT, Circuit Judges, and LEGGE,* District Judge.

TROTT, Circuit Judge:

Cameron E. Berry was a pathologist employed by the Veterans Administration ("VA"). He alleges defendants conspired to violate his First and Fifth Amendment rights by (1) suspending his clinical privileges, (2) conducting a clandestine "peer review" of his pathology reports, and (3) driving Berry from his job. The district court granted summary judgment for defendants, finding Berry's claims were precluded because he had available remedies under the statutory scheme which covers VA employees in the Department of Medicine and Surgery ("DMS"). We affirm.

I

Berry was hired by the VA in April, 1983 as the Chief of Laboratory Services at the Roseburg Veterans Medical Center ("RVMC") in Oregon. He soon became aware of incidents of possible malpractice in the surgery department, which he reported for investigation. Berry alleges that none of the numerous cases he reported for further investigation were ever considered by the Clinical Executive Board, as required by RVMC bylaws. Unsatisfied with the internal response to his concerns, Berry later reported the alleged malpractice to organizations outside RVMC.

In 1985, after several years of conflict between Berry and the surgery department, defendant Chief of Staff Hollander, Chief of Surgery Marshall, Chief of Medicine Wagner and Berry attended a meeting. Berry alleges that, at this meeting, Hollander threatened to subject Berry's laboratory services department to a review in retaliation for Berry's charges of deficiencies in the surgical department. He also claims that four months before this meeting, Hollander and defendant Norman, Director of the RVMC, had plotted to drive Berry from his job by charging him with incompetence.

After this meeting, sixty-two of Berry's pathology reports were sent to the Portland VA Hospital to be reviewed by defendant Galey, a VA pathologist. Berry alleges this review was punitive—done in secret and for the purpose of discrediting him.

In July and August 1986, Berry went on sick leave for seven weeks. When he returned to RVMC on August 25, 1986, he discovered that his office had been cleaned out and his personal possessions removed. With the approval of defendant A.B. Carr, the VA Regional Director, Norman ordered Berry to remain in the hospital library during working hours.

One week later, Berry was ordered to undergo a physical and psychiatric examination. He refused. He later received a psychiatric examination by Dr. H.R. Henderson, who determined Berry was no longer capable of working at RVMC. After this examination, the Physical Standards Board recommended that Berry be terminated due to illness. Berry was discharged from the VA in late February or early March, 1987.

Berry filed this action on April 17, 1987, alleging defendants violated his First Amendment free expression rights and Fifth Amendment due process rights. These claims were brought as *Bivens*[1] ac-

---

* The Honorable Charles A. Legge, United States District Judge for the Northern District of California, sitting by designation.

1. In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Court held

that federal officials acting under color of authority could be sued for violating plaintiff's Fourth Amendment rights. In subsequent cases, the Court has expanded *Bivens* to apply to other amendments. *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (Eighth

tions against the VA officials who were involved in the alleged conspiracy to drive Berry from his job. Berry claims he was denied due process when (1) he was detailed to the VA library, effectively revoking his clinical privileges, (2) the defendants conducted a secret review of his pathology cases, intending to discredit him, and (3) the defendants subjected him to other acts of harassment. Berry also alleges his First Amendment free expression rights were violated because the defendants committed the above acts to punish him for speaking out about VA malpractice. The district court found Berry's claims were precluded by *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), and *Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), because of existing statutory remedies. These remedies include those provided by DMS grievance and termination procedures, by the Civil Service Reform Act, the Administrative Procedure Act, and the Federal Employees Compensation Act. We must decide whether the district court erred in finding .Berry's claims precluded.

## II

We review de novo the grant of summary judgment based on preclusion by an existing statutory scheme. *Karamanos v. Egger,* 882 F.2d 447, 449 (9th Cir.1989).

## III

In *Bush v. Lucas,* a federal employee was fired after making public remarks critical of his employer, the National Aeronautics and Space Administration ("NASA"). Declining to reach the merits of his First Amendment free speech claim, the Court refused to recognize a non-statutory remedy (*Bivens* claim) where there was "an elaborate, comprehensive scheme ... by which improper action may be redressed." *Bush,* 462 U.S. at 385, 103 S.Ct. at 2415. Where there is a remedial system carefully crafted by Congress, the courts should defer to "Congress' ability to make an even-

handed assessment of the desirability of creating a new remedy for federal employees...." *Id.* at 389, 103 S.Ct. at 2417. The presence of a statutory remedial system is a "special factor" which counsels hesitation in implying non-statutory remedies. *Id.* at 375–76, 103 S.Ct. at 2410–11 (quoting *Bivens,* 403 U.S. at 395–96, 91 S.Ct. at 2004–05). In the absence of authorization by Congress, the Court declined to fashion additional remedies.

The *Bush* special factors exception was affirmed and expanded five years later in *Schweiker v. Chilicky,* which held that even an incomplete statutory remedy rendered a *Bivens* cause of action unavailable. In *Chilicky,* Social Security Disability recipients alleged state and federal officials had adopted illegal policies that caused the wrongful termination of their benefits. Plaintiffs sued on the constitutional tort theory of *Bivens,* claiming violation of their due process rights. Although the Court acknowledged the statutory remedies were limited, it denied the plaintiffs' claim for relief. The congressionally-created remedy for wrongful termination of Social Security benefits, an award of back benefits, failed to provide complete relief because it did not allow for money damages to compensate independently for constitutional violations. The Court held the lack of a specific remedy for constitutional injury was an inadequate reason to imply a *Bivens* cause of action. "[T]he presence of alleged unconstitutional conduct that is not *separately* remedied under the statutory scheme [does not] imply that the statute has provided 'no remedy' for the constitutional wrong at issue." *Id.* at 427–28, 91 S.Ct. at 2020–21 (emphasis in original).

This court has broadly applied *Chilicky,* holding that where Congress has provided *some* mechanism for relief, *Bivens* claims are precluded. *Kotarski v. Cooper,* 866 F.2d 311 (9th Cir.1989) (*Kotarski II*), *on remand* from 487 U.S. 1212, 108 S.Ct. 2861, 101 L.Ed.2d 897 (1988), *vacating* 799 F.2d 1342 (9th Cir.1986) (*Kotarski I*), in

Amendment); *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (Fifth Amendment); *cf. Nixon v. Fitzgerald,* 457 U.S.

731, 748 n. 27, 102 S.Ct. 2690, 2700 n. 27, 73 L.Ed.2d 349 (1982) (assuming in dicta First Amendment a proper basis for *Bivens* action).

light of *Chilicky; see also Williams v. General Servs. Admin.*, 905 F.2d 308 (9th Cir.1990).[2] The evolution of the *Kotarski* case in this court is instructive. In *Kotarski I,* we held the plaintiff's *Bivens* action was not precluded because he was a probationary employee and had no guaranteed access to a statutory remedy. Any remedy was discretionary with the employing agency. *Kotarski I,* 799 F.2d at 1346–47. We found this remedy inadequate, holding that an *adequate* statutory remedy was necessary to preclude an action under *Bush v. Lucas. Id.* The Supreme Court vacated our decision in light of its intervening decision in *Chilicky.* On remand in *Kotarski II,* we held the plaintiff's *Bivens* claims were precluded under the principles established in *Chilicky.* "Where Congress has designed a program that provides what it considers adequate remedial mechanisms for constitutional violations, *Bivens* actions should not be implied. So long as Congress' failure to provide money damages, or other significant relief, has not been inadvertent, courts should defer to its judgment...." *Kotarski II,* 866 F.2d at 312 (citations omitted).

## IV

We have not ruled on whether VA physicians are precluded from bringing *Bivens* actions against their co-employees. Although there are cases in this circuit in which VA physicians brought *Bivens* claims against federal officials, none have reached the issue of whether such claims are precluded by *Bush v. Lucas.*[3]

The issue of whether VA physicians are precluded from bringing *Bivens* actions was squarely addressed by the Fifth Circuit in *Heaney v. United States Veterans Admin.*, 756 F.2d 1215 (5th Cir.1985). The

*Heaney* plaintiff alleged his First and Fifth Amendment rights were violated when his surgical privileges were suspended. The court noted VA physicians receive less procedural protection than other federal employees, who are governed by the Civil Service Reform Act ("CSRA"). VA medical personnel are instead subject to the regulations of the Department of Medicine and Surgery, which were "specifically designed to offer less protection than the CSRA." *Id.* at 1218. The court held that DMS procedures are:

> [D]esigned to allow the DMS to discipline unsatisfactory or disqualified employees holding positions such as [the plaintiff's] without the restrictions pertaining to the civil service. Accordingly, we must recognize that to allow a nonstatutory damage remedy here would have some effect tending to upset the balance between the interests of maintaining quality medical personnel and the protection of constitutional rights struck by Congress in creating the DMS.

*Id.* at 1219 (footnote omitted).

Because an implied nonstatutory remedy would upset the balance of interests struck by Congress, the court held that the plaintiff's *Bivens* claims were barred by *Bush.* The DMS regulations provided for reinstatement and other relief to remedy unconstitutional adverse personnel decisions. "Thus, the DMS system provides a measure of relief. This is enough to preclude a damages remedy." *Id.* at 1221; *see also Premachandra v. United States,* 739 F.2d 392, 394 (8th Cir.1984) (VA physician's Federal Tort Claims Act claim barred because civil service remedies are exclusive).

## V

■ Berry argues that his claims are not precluded by *Bush v. Lucas* because he

---

**2.** Other Ninth Circuit cases precluding *Bivens* actions are *Karamanos v. Egger,* 882 F.2d 447, 451–52 (9th Cir.1989) (IRS agent's First Amendment claim precluded by remedy under Civil Service Reform Act ("CSRA")); *Johnston v. Horne,* 875 F.2d 1415 (9th Cir.1989) (Naval Shipyard employee's Fifth Amendment due process claim precluded by statutory remedy); *David v. United States,* 820 F.2d 1038, 1041 (9th Cir.1987) (Defense Department agency employee's First

Amendment claim precluded by remedy under CSRA).

**3.** *See e.g., Roth v. Veteran's Admin.,* 856 F.2d 1401 (9th Cir.1988) (defendants' qualified immunity sole issue on appeal); *Daly–Murphy v. Winston,* 837 F.2d 348, 355 (9th Cir.1987) (*Bivens* claim barred by failure to properly serve defendants); *Hewitt v. Grabicki,* 794 F.2d 1373 (9th Cir.1986) (*Bivens* claim barred by defendant's qualified immunity).

had no administrative remedy.[4] His argument is pinned in part on the fact that the actions complained of did not take place during a statutorily authorized dismissal proceeding, where wrongs presumably might be remedied in the course of routine review. Defendants respond that Berry's claims are precluded by *Bush* and *Chilicky* because he had a variety of remedies available under DMS regulations, the Civil Service Reform Act, 5 U.S.C. §§ 1206–08, the Federal Employees Compensation Act, 5 U.S.C. § 8101, and the statute governing VA disciplinary proceedings, 38 U.S.C. § 4110.

We cannot accept Berry's argument that no sufficient remedy existed for the harassment he alleges. As a DMS employee, Berry was entitled to file a grievance to protest any work-related action with which he was dissatisfied. DMS Manual Chapter 8, Sections B–C. He was also entitled to a hearing, to which he could bring a representative, and an appeal to the VA Administrator from an adverse decision of the hearing committee. *Id.*

In addition, Berry could and did seek relief under the "whistle-blower" provisions of the Civil Service Reform Act, 5 U.S.C. §§ 1206–08. Under those provisions, an employee who alleges prohibited personnel practices (such as retaliation for whistle-blowing) may complain to the Office of Special Counsel, which investigates, may hold a hearing, and recommend relief. It is true that the Special Counsel lacks the power to impose the recommended relief on the offending agency, but that fact does not render the remedy meaningless. Indeed, the availability of this remedy through the Office of Special Counsel was the basis for our denying *Bivens* relief for whistle-blowing in *Kotarski II*, 866 F.2d at 312.

To the extent that Berry complains of his removal from service, he was afforded the procedural protections provided by the DMS Manual, Chapters 9–10. Under those provisions, a physician believed to be suffering from physical or mental disability is examined by a Physical Standards Board. The physician is given notice of the reasons for the examination, and of the right to have his own examination performed and the results submitted to the Board. The Board's decision is then subject to review by the Central Office Physical Standards Board, and by the Chief Medical Director, who alone can approve the discharge of the physician.

A final decision discharging a physician may then be subjected to judicial review under the Administrative Procedure Act, 5 U.S.C. §§ 702, 706. *See Franks v. Nimmo*, 796 F.2d 1230, 1239–40 (10th Cir.1986). The decision may be reversed if the physician was denied due process or if the decision was arbitrary, capricious or otherwise illegal. *Heaney*, 756 F.2d at 1219.

Finally, a physician discharged for disability may seek a remedy, as Berry has, under the Federal Employees Compensation Act, 5 U.S.C. § 8101.

■ Although these remedies do not guarantee full and independent compensation for constitutional violations suffered by a VA physician, they do indicate a congressionally-authorized and comprehensive remedial scheme sufficient to preclude additional forms of relief. "Where Congress has designed a program that provides what it considers adequate remedial mechanisms for constitutional violations, *Bivens* actions should not be implied." *Kotarski II*, 866 F.2d at 312. To allow Berry's action would eviscerate the Supreme Court's holdings in

---

4. Berry relies on *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), in which the Court permitted a federal employee to bring a *Bivens* action against her former employer, a Congressman. The plaintiff employee in *Davis* had no administrative remedy. She was not in the competitive service, and therefore was not protected by the remedial provisions of § 717 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16. *Id.* at 247, n. 26, 99 S.Ct. at 2278, n. 26. Since Berry was covered by a remedial scheme, *Davis* lends no support to his claims. The only similarity between *Davis* and the present case is that reinstatement is unavailable as a remedy. However, to imply a *Bivens* action whenever a plaintiff cannot return to his employment would create a loophole in the special factors exception doctrine.

**316**

*Bush* and *Chilicky*, which we cannot sanction.

## VI

The Supreme Court has made clear the propriety of according great deference to Congress in devising remedial schemes for wrongs committed against employees of the federal government. When Congress has created a statutory remedy for potential harms, the courts must refrain from implying non-statutory causes of actions such as *Bivens*. In obeying the Court's directive to show deference to Congress, we held in *Kotarski II* that if there is *some* statutory mechanism for remedying harm to a governmental employee, non-statutory claims are barred. Because Berry had several remedial mechanisms available to him, his *Bivens* claims are barred. Accordingly, the judgment is

AFFIRMED.