8 F.3d 25
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Ronald M. ANDERSEN, Plaintiff-Appellant,
v.
UNITED STATES of America, Equal Employment Opportunity
Commission, an agency of the United States of
America, Clarence Thomas, Richard R.
Trujillo; Richard L. Green,
Defendants-Appellees.
 No. 91-16592.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 9, 1993.
Decided Oct. 5, 1993.
 
 Before: FLETCHER, POOLE, and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Ronald Andersen, former senior trial attorney with the Equal Employment Opportunity Commission ("EEOC"), appeals the district court's dismissal for lack of jurisdiction of his action seeking reinstatement. The district court held that the Civil Service Reform Act ("CSRA" or "Act"), 5 U.S.C. § 2302, precludes judicial review. Andersen contends that the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., confers jurisdiction on the district court or, alternatively, that it has inherent power to provide him a remedy. He argues that actions involving the protection of professional ethics may not be relegated to a "personnel forum." Appellant's Opening Brief at 36. Such actions, he suggests, fall within a narrow exception to Congress' intent to limit federal employees' remedies to a single comprehensive administrative remedial structure for the resolution of employment grievances.
 
 
 3
 Andersen sought to invoke jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1361. The district court dismissed his action for lack of subject matter jurisdiction finding none "under either the APA [5 U.S.C. § 702], or the Constitution." Our jurisdiction rests on 28 U.S.C. § 1291. District court dismissals "based on preclusion by an existing statutory scheme" are reviewed de novo. Berry v. Hollander, 925 F.2d 311, 313 (9th Cir.1991); see also Rivera v. United States, 924 F.2d 948, 950 (9th Cir.1991) (citing Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990)) (de novo review of the existence of subject matter jurisdiction). Because Congress chose to provide very limited remedies to government employees in Andersen's civil service category, we cannot provide an independent remedy, by implication or otherwise.[1] We affirm the dismissal.
 
 I.
 
 4
 Ronald Andersen was an attorney in the Phoenix District Office of the EEOC for nine years. Hired as a "Schedule A" employee, he is an "excepted service" employee under the terms of the CSRA. From late 1987 until early 1988, Andersen was the senior trial attorney assigned to a sexual harassment case to be tried in federal district court in New Mexico. In January 1988, while preparing for trial, Andersen uncovered a scheme to secure through bribes the false testimony of government witnesses to be presented at trial. He and his supervisors, Trujillo and Green, disagreed on the appropriate response to these revelations. Relying on the advice of the chair of the ethics committee of the Arizona State Bar Association whom he retained as an attorney, Andersen believed that he was under professional ethical obligations to take action to prevent misconduct and fraud on the court, specifically withdrawing and advising the court of his reasons. His supervisors expressly forbade him to do so and threatened to treat a failure to follow orders as insubordination. Unable to comply both with the professional ethical advice he had received and his supervisor's orders, Andersen resigned. His attorney explains, "Andersen was placed in the impossible situation of being [professionally] unethical as a lawyer or being insubordinate as an employee. His only alternative was to leave his employment and correct the ethical problem." Aff. of William Bransford, dated Nov. 29, 1990, at p 4. After traveling at his own expense to the court in New Mexico to inform it of the potential fraud and misconduct,[2] Andersen completed the formal employment termination process characterizing his resignation as a constructive discharge.
 
 
 5
 Shortly after his separation from employment, Andersen sought reinstatement through a number of procedural avenues. He wrote to the Administrative Officer of the Phoenix District Office of the EEOC seeking information on how to initiate an administrative grievance process. He wrote to the General Counsel and Chairman of the EEOC requesting reinstatement. He contacted his union for its assistance.[3] He complained to the Office of Special Counsel ("OSC") alleging reprisals for whistleblowing under 5 U.S.C. §§ 2301(b)(9), 2302(b).
 
 
 6
 On all fronts Andersen was rebuffed. The OSC "found insufficient evidence of any prohibited personnel practice." Letter from Leonard H. Dribinsky, Asst. Special Counsel for Prosecution, to William Bransford, dated November 20, 1988. The General Counsel indicated that an administrative grievance procedure was barred by Andersen's membership in a collective bargaining unit and that a negotiated grievance procedure was not available because, by his letter to the Administrative Officer, he had specifically elected not to pursue this avenue.[4]
 
 
 7
 In February 1989, Andersen filed a complaint in district court claiming: (1) a constitutionally-protected property interest in his job; (2) wrongful termination (a pendent state claim); (3) a denial of due process under the APA; (4) a denial of his First Amendment rights. Ruling on a motion to dismiss for lack of jurisdiction, Judge Hardy dismissed Andersen's Bivens claims for damages against all parties and later dismissed the pendent state claim. He allowed the action, to the extent Andersen sought equitable relief, to proceed against the United States, the EEOC, and Thomas. However, upon a renewed motion to dismiss, Judge Broomfield, to whom the case had been transferred, held that the district court lacked jurisdiction because the CSRA precluded judicial review.
 
 II.
 
 8
 The CSRA, enacted in 1978, provides federal employees with statutory remedies for "prohibited personnel practices" and "adverse actions." Until that time, aggrieved employees asserted a "hodgepodge" of claims founded on a variety of jurisdictional grounds. McAuliffe v. Rice, 966 F.2d 979, 980 (5th Cir.1992). Congress substituted a unified system for the "patchwork" one that had developed. United States v. Fausto, 484 U.S. 439, 444-45 (1988); Saul v. United States, 928 F.2d 829, 833 (9th Cir.1991); Rivera, 924 F.2d at 951. Nevertheless, the scheme was not all encompassing. The Supreme Court early recognized that the "comprehensive" scheme had lacunae. Bush v. Lucas, 462 U.S. 367, 385 & n. 28 (1983) ("[n]ot all personnel actions are covered by this system"). The CSRA accords varying levels of relief and review for different kinds of injuries suffered by distinct categories of employees. The Act in effect at the time Andersen resigned did not provide significant measures of administrative and judicial relief to "excepted service" employees, relief that was afforded to "competitive service" employees.
 
 
 9
 The CSRA recognizes at least two kinds of injuries. Chapter 23 sets forth "prohibited personnel practices," the administrative remedies for which are to be obtained through the Office of Special Counsel (OSC). 5 U.S.C. §§ 2301, 2303, 1206, 1208 (1988). The Special Counsel has been compared to a prosecutor.[5] The OSC, in its discretion, brings charges to the Merit Systems Protection Board ("MSPB" or "Board") based on an employee's complaints and no appeal may be taken by the employee, § 1206. See also Saul, 928 F.2d at 833-34 (describing Chapter 23 actions); Rivera, 924 F.2d at 950 (describing OSC relief). Chapter 75 governs "adverse actions." 5 U.S.C. §§ 7501-7504, §§ 7511-7514.[6] Chapter 75 remedies that include access to the Board and ultimately a federal court[7] are not available to a "Schedule A" "excepted service" appointee,[8] such as, Andersen. Despite his nine years of service to the EEOC, the CSRA then in effect afforded him only Chapter 23 protection.[9]
 
 
 10
 Andersen sought relief in district court when the OSC elected not to bring a charge to the MSPB on Andersen's behalf. Andersen argued to the district court that since his claims are not cognizable under the CSRA, its provisions precluding judicial review are equally inapplicable. The district court's dismissal was grounded in the preemptive nature of the comprehensive personnel statute that by its own terms provides limited remedies to excepted service employees. On appeal, Andersen takes two tacks. First he argues that the CSRA is inapplicable to his particular circumstances. Second he attacks the preclusive sweep accorded it by the district court.
 
 A.
 
 11
 If Andersen's "constructive discharge" is a "prohibited personnel practice" within the meaning of the CSRA, 5 U.S.C. § 2302, any relief Andersen may have is limited to CSRA remedies. The language of this provision is broad. It encompasses "whistle blowing," § 2302(b)(8), and a "catchall"[10] section referring to any violations of the "merit system principles," § 2302(b)(11). These principles include the maintenance of "high standards of integrity, conduct, and concern for the public interest," § 2301(b)(4), and protection from reprisals against "whistleblowers," § 2301(b)(9), the basis upon which Andersen originally filed a complaint with the OSC. The district court noted at least two of these provisions as "cognizant of plaintiff's claims in this case." District court opinion at 22.
 
 
 12
 Andersen argues that a "narrow exception" for actions based on ethics violations is contemplated by Congress so as not to "allow a federal agency hiding within personnel laws to cover up the unethical acts of its supervisory attorneys." Appellant's Opening Brief at 21, 35. However, Congress' recent amendments to open greater administrative and judicial avenues to "whistleblowers" of all kinds, including those bound by professional ethics, belies Andersen's argument. See Whistleblower Protection Act of 1989, Pub.L. No. 101-12, 103 Stat. 16 (1989), as codified at 5 U.S.C. §§ 1221 (affording recourse to MSPB and the Federal Circuit for actions alleging "prohibited personnel practice," § 2302(b)(8)); see also Pub.L. No. 101-376, 104 Stat. 46 (1990), adding § 7511(a)(1)(C) (expanding categories of employees covered under Chapter 75). Instead of exempting such employees and such grievances from the CSRA regime, Congress has progressively expanded the remedies available for whistleblowers and those whose jobs are jeopardized by maintaining "high standards of integrity, conduct, and concern for the public interest." 5 U.S.C. § 2301(b)(4). We conclude that Andersen's claim of constructive discharge is governed by the CSRA and limited to its remedies.
 
 B.
 
 13
 Andersen's second argument that the CSRA's preclusive sweep is not so broad as to deny jurisdiction in his case is not persuasive. The Supreme Court consistently has held that Bivens actions and actions under the Tucker or Back Pay Act, 28 U.S.C. § 1491, are precluded by the CSRA. Bush, 462 U.S. at 368, 388-90; Fausto, 484 U.S. at 447-55. In Bush, the Supreme Court acknowledged that the remedy available for the violation of a federal employee's First Amendment rights under the CSRA "was not as completely effective as a Bivens-type action based directly on the Constitution," but nonetheless declined to find jurisdiction. Bush, 462 U.S. at 377. It reasoned that Congress was better positioned to determine what level of relief to afford government employees, id. at 390, and that "it would be inappropriate for [the Court] to supplement that regulatory scheme with a new judicial remedy," id. at 368.[11] After analyzing the remedies provided by the CSRA, and noting that for some employees these remedies are sharply circumscribed, the Court in Fausto held that federal employees could not seek judicial review under the Tucker Act. In its view:
 
 
 14
 the absence of provision for these employees to obtain judicial review is not an uninformative consequence of the limited scope of the statute, but rather manifestation of a considered congressional judgment that they should not have statutory entitlement to review for adverse action of the type governed by Chapter 75 [of the CSRA, 5 U.S.C. §§ 7511, 7701, 7703].
 
 
 15
 Fausto, 484 U.S. at 448-49. The Congressional intent not to allow Tucker Act remedies for certain categories of employees was found in part from the fact that these employees' were deliberately excluded from certain CSRA protections, including judicial review. Id. at 455. Because of "the comprehensive and integrated [nature of the] review scheme of the CSRA," the Court held that no supplementary Tucker Act jurisdiction existed. Id. at 454; see also Broida, supra note 5 at 1993-94 (emphasizing the "significant repercussions" of Fausto for the availability of judicial review outside the CSRA).
 
 
 16
 Accepting the CSRA as "the bedrock of our analysis," Saul, 928 F.2d 829 at 832, our court has denied judicial review outside the relief provided by the CSRA.[12] See Saul, 928 F.2d at 840; Berry, 925 F.2d at 315-16; Rivera, 924 F.2d at 951; Kotarski v. Cooper [hereinafter Kotarski II ], 866 F.2d 311, 312 (9th Cir.1989); Karamanos v. Egger, 882 F.2d 447, 451-53 (9th Cir.1989) (precluding Bivens claims); Saul, 928 F.2d at 840-43; Lehman v. Morrissey, 779 F.2d 526, 526-27 (9th Cir.1985) (precluding common law tort claims); Rivera, 924 F.2d at 951-52 (precluding Federal Tort Claims Act claims); Veit v. Heckler, 746 F.2d 508, 511 (9th Cir.1984) (precluding APA claims). The absence of any kind of judicial review or remedy under the CSRA for certain classes of employees or categories of claims does not alter our jurisdictional analysis. Fausto, 484 U.S. at 448; Saul, 928 F.2d at 840 (CSRA "precludes even those Bivens claims for which the act prescribes no alternative remedy"). In some cases we have relied on this reasoning to preclude all other possible grounds for judicial review where the CSRA applies. Lehman, 779 F.2d at 528 (holding CSRA "provides [employee's] sole recourse"); Veit, 746 F.2d at 511 (declaring trial court "correct in holding that neither the CSRA, the APA nor any other authority gave it the power to review [employee's claim]" and noting "a clear congressional intent to permit federal court review as provided in the CSRA or not at all"); see also Saul, 928 F.2d at 839, 841 (describing Veit court's statement as dictum but citing with approval Lehman holding). As the Rivera court put it:
 
 
 17
 [T]he clear thrust of [this precedent] is that Congress's purpose in enacting the CSRA was to channel grievances and disputes arising out of government employment into a single system of administrative procedures and remedies, subject to judicial review [as therein provided]. To permit [additional claims] to supplant the CSRA's remedial scheme certainly would defeat that purpose.
 
 
 18
 Rivera, 924 F.2d at 951.[13] But see Spagnola v. Mathis, 859 F.2d 223, 230 (D.C.Cir.1988) (en banc) (reserving "the right of civil servants to seek equitable relief against their supervisors, and the agency itself, in vindication of their constitutional rights").[14]
 
 
 19
 Andersen argues that permitting his APA claim would not supplant the CSRA mechanism because "[b]oth the CSRA and APA have their place in the federal scheme" and the "operative facts" of his case counsel reconciling the competing federal statutes. Appellant's Brief at 35. To the extent that this argument is not a reprise of the earlier contention that the CSRA simply does not apply to employment disputes involving compliance with ethical obligations,[15] it has no support in the caselaw identifying the CSRA as the comprehensive, integrated statutory mechanism affording federal employees whatever relief Congress has seen fit to accord. Congress' failure to provide judicial review to some categories of employees simply "reflects a congressional intent that no judicial relief be available," Veit, 746 F.2d at 511 (citing Carducci v. Regan, 714 F.2d 171, 174 (D.C.Cir.1983) (internal quotations omitted)). That APA actions in particular may be precluded has already been established in this circuit, Veit, 746 F.2d at 511, and others. See e.g., Stephens v. Department of Health & Human Serv., 901 F.2d 1571, 1575-77 (11th Cir.), cert. denied, 498 U.S. 998 (1990); Ryon v. O'Neill, 894 F.2d 199, 201-02 (6th Cir.1990); Carducci, 714 F.2d at 174-75; Broadway v. Block, 694 F.2d 979, 984 (5th Cir.1982); see also Broida, supra note 5 at 1996-97.[16]
 
 
 20
 Andersen attempts to escape the force of this precedent by focussing on the legislative history of the APA indicating that this statute may afford equitable relief for actions arising out of "government employment," H.R.Rep. No. 94-1656, 94th Cong., 2d Sess. 8, reprinted in 1976 U.S.C.C.A.N. 6121, 6128-29; Bowen v. Massachusetts, 487 U.S. 879, 899-900 (1988), and on Supreme Court precedent holding that the National Security Act ("NSA"), 50 U.S.C. § 403(c), does not preclude APA-based review of "colorable constitutional claims." Webster v. Doe, 486 U.S. 592, 603 (1988).[17] The district court points out that while the "APA may apply to 'government employment,' " the APA, itself, provides that it does not apply to the extent other statutes preclude judicial review, 5 U.S.C. 701(a)(1). District court opinion at 19 (internal citations omitted).[18]
 
 III.
 
 21
 The statutory regime that we must apply has been substantially amended since Andersen's grievance arose. If applied retroactively, the amendments would afford him both greater administrative recourse and judicial review. As much as we are struck by the injustice of denying access to redress to a career attorney with nine years of service, we cannot cure the deficits in the statute applicable to Andersen's case. We must affirm.
 
 
 22
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 On August 17, 1990, Congress amended the CSRA to expand the relief available to excepted service employees with two years continuous service. Pub.L. No. 101-376, § 2(a), 104 Stat. 461; 5 U.S.C. § 7511(a)(1)(C)(ii). The amendments were given prospective effect only. Section 2(c) of Pub.L. 101-376 provides that the amendments "shall apply with respect to any personnel action taking effect on or after the effective date of this Act [Aug. 17, 1990]." See 5 U.S.C. §§ 4303, 7511
 
 
 [2]
 Andersen intended to file a motion to withdraw against the orders of his supervisors. Upon his disclosure to the district court, it vacated the trial date. The case never went to trial. Without discussing what measures it took, the government states that the case was settled
 
 
 [3]
 The collective bargaining agreement ("CBA") between the EEOC and the National Council of EEOC Locals No. 216, American Federation of Government Employees, AFL-CIO requires that employees choose between administrative and union-sponsored grievance procedures. CBA § 47.05(a), (b). Union-sponsored grievances may be initiated by the union or the employee. CBA § 47.02(a)(1)-(2). Andersen notes that the union declined to initiate a grievance on his behalf
 
 
 [4]
 The Office of the General Counsel concluded that Andersen's letter to the Phoenix District Office initiating an "other than ... Union Grievance" could not be considered notice of an intention to proceed with a negotiated or union grievance
 
 
 [5]
 See Peter B. Broida, A Guide to Merit Systems Protection Board Law & Practice 29 (8th ed. 1991); Ellen Bussey, ed. Federal Civil Service Law & Procedures 53 (2d ed. 1990)
 
 
 [6]
 Section 7511 sets out which categories of employees may bring charges on account of major adverse action taken against them including removal, suspension for more than 14 days or furlough for more than 30 days, and reductions in grade or pay. Section 7513 details the procedural protections to be accorded by the agency involved. Appeal is provided to the Merit Systems Protection Board, § 7701, and judicial review, by the Federal Circuit, § 7703. Prior to the 1990 amendments, only "preference eligibles" of the "excepted service" (those who had served in the armed forces) were covered, § 7511(a)(1)(B). See 5 U.S.C. § 2108(3); Broida, supra note 5 at 39. Other "excepted service" employees had no recourse to Chapter 75 protections even if they suffered major adverse actions. See Fausto, 484 U.S. at 446-47
 
 
 [7]
 See Broida, supra note 5 at 34-35, 39-41; see also supra note 6
 
 
 [8]
 The civil service is composed of a competitive and excepted service. 5 U.S.C. §§ 2101(1), 2102, 2103; 5 C.F.R. §§ 1.2-4, 6.1-2, 212.101, 212.301, 213.101-03, 213.3101-02, 213.3201, 213.3301. See Broida, supra note 5 at 37-38. Under the regulations attorneys have been designated as "Schedule A" employees. 5 C.F.R. § 213.3102(d)
 
 
 [9]
 Were Andersen an employee within the terms of then Section 7511 his alleged constructive discharge would be treated as a major adverse action warranting a hearing before the MSPB. See Bussey, supra note 5 at 97-98 (coerced resignation or retirement viewed as adverse action and subject to a hearing); Broida, id. at 666-70 (discussing jurisdiction under Chapter 75 for constructive adverse actions); Dumas v. Merit Sys. Protection Bd., 789 F.2d 892, 893, 895 (Fed.Cir.1986) (affording right to an evidentiary hearing on the existence of jurisdiction where voluntary nature of removal in question)
 
 
 [10]
 See Bussey, supra note 5 at 131
 
 
 [11]
 Although Schweiker v. Chilicky, 487 U.S. 412 (1988) dismissed a Bivens claim in the context of the Social Security Act, its analysis has been widely applied in CSRA cases. The Court vacated and remanded for reconsideration in light of Chilicky pending cases that had allowed Bivens actions. See e.g., Kotarski v. Cooper [hereinafter Kotarski I ], 799 F.2d 1342 (9th Cir.1986), vacated, 487 U.S. 1212 (1988), rev'd on reconsid., Kotarski v. Cooper [hereinafter Kotarski II ], 866 F.2d 311 (9th Cir.1989); see also McIntosh v. Weinberger, 810 F.2d 1411 (8th Cir.1987), vacated sub nom. Turner v. McIntosh, 487 U.S. 1212 (1988), rev'd on reconsid., McIntosh v. Turner, 861 F.2d 524 (8th Cir.1988). The Chilicky decision relies on the Court's opinion in Bush and extends its reasoning. Noting that "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional Bivens remedies," the Court emphasized the point that "Congress is the body charged with making the inevitable compromises required in the design of a massive and complex welfare benefits program ... and we see no legal basis that would allow us to revise its decision." Chilicky, 487 U.S. at 423, 429. See Pereira v. United States Postal Serv., 964 F.2d 873, 875 (9th Cir.1992) (noting extension of reasoning)
 
 
 [12]
 But see Broida, supra note 5 at 1997; Burroughs v. Office of Personnel Management, 764 F.2d 1300 (9th Cir.1985) (pre-Fausto, APA-based review of classification decisions issued by Office of Personnel Management); see also Karamanos v. Egger, 882 F.2d 447, 451, n. 1 (9th Cir.1989) (questioning validity of Burroughs in light of Fausto )
 
 
 [13]
 Prior to the Chilicky decision, we relied upon the analysis in Bush suggesting that "meaningful" judicial review must be available for certain claims. See Kotarski I, 799 F.2d at 1346-50; see also supra note 11. However, in the wake of the Supreme Court's extension of Bush, this is clearly not the appropriate inquiry. See Saul, 928 F.2d at 837 ("we shifted our inquiry from evaluating whether the CSRA provided ... meaningful and adequate remedies to deciding if the CSRA's omission of a ... remedy ... was 'inadvertent' "). Cf. Broida, supra note 5 at 30 ("[t]he Board lacks authority to broaden its statutory authority, no matter how compelling the injustice presented by an employee")
 
 
 [14]
 Judge Hardy cited Spagnola, but relied solely on Kotarski I to retain jurisdiction. He characterized Kotarski I as viable, despite developments in Supreme Court and Ninth Circuit precedent, for Spagnola-like claims, i.e. constitutional claims for which equitable relief is sought. Andersen presses Spagnola as authority for exercising jurisdiction over his constitutional claims (property interest in civil service employment, and first amendment rights). He seeks equitable injunctive relief (reinstatement). See Gilliam v. Miller, 973 F.2d 760, 761 (9th Cir.1992) (reinstatement considered injunctive relief); Smith v. Barton, 914 F.2d 1330, 1337 (9th Cir.1990), cert. denied, 111 S.Ct. 2825 (1991) (same). We here assume, as the Bush court did, that Andersen's constitutional rights have been violated, 462 U.S. at 372. We nevertheless cannot rely on Spagnola to provide him a remedy. Our court previously has held that "[t]he CSRA precludes [a federal employee] from seeking injunctive relief for his asserted constitutional injury just as it precludes him from bringing a Bivens action for damages." Saul, 928 F.2d at 843 & n. 7 (noting that under Spagnola the "D.C. Circuit differs from other circuits by permitting federal employees to vindicate their constitutional rights through suits against their supervisors and employing agencies for injunctive relief, but not for damages"). Nor may we rely on Kotarski I, see supra notes 11 & 13
 
 
 [15]
 In his reply brief, Andersen characterizes the APA as "distinct and coexistent with the CSRA." Grey Brief at 4 (emphasis added). At oral argument, Andersen supplied this court with supplemental authority stating that Veterans Administration physicians may obtain judicial review under the APA. Berry v. Hollander, 925 F.2d 311, 315 (9th Cir.1991) (citing Franks v. Nimmo, 796 F.2d 1230, 1239-40 (10th Cir.1986); Heaney v. United States Veterans Admin., 756 F.2d 1215, 1219 (5th Cir.1985)). However, Veterans Administration physicians are not covered by the CSRA. Heaney, 756 F.2d at 1218; see also Franks, 796 F.2d at 1239. Because we have determined that the CSRA applies, this line of precedent is irrelevant
 
 
 [16]
 Before the Supreme Court "emphatically and conclusively established the preemptive nature of the CSRA," Stephens v. Department of Health & Human Serv., 901 F.2d 1571, 1575-76 (11th Cir.), cert. denied, 498 U.S. 998 (1990), a distinction was drawn between constitutional and non-constitutional APA claims. See e.g., Carducci v. Regan, 714 F.2d 171, 173-77 (D.C.Cir.1983). In asserting APA jurisdiction, Andersen contends that his due process rights have been violated under the APA. That his APA claim is constitutional in nature does not overcome the reasoning of the Supreme Court and circuit precedent which confers no special status on constitutional violations in arriving at jurisdictional determinations. Chilicky, 487 U.S. at 413 ("Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration"); see also Stephens, 901 F.2d at 1575-76 (citing Veit, 746 F.2d at 511)
 
 
 [17]
 In Webster, the Court concluded that the NSA did not preclude APA review. It described the APA as the "comprehensive" statute. Webster, 486 U.S. at 599. Confronted with an argument similar to the one Andersen advances, the Eleventh Circuit has held Webster "irrelevant[ ]." See Stephens, 901 F.2d at 1577 (plaintiff characterized Webster as representing the "court's reaffirmance of the district court's role in reviewing federal personnel decisions under the APA"). In our view Webster is readily distinguishable. It involved a different statute (the NSA), one not heralded as a comprehensive and integrated remedial system where Congressional intent to exclude additional relief could be discerned. Moreover, the agency involved in that case, the CIA, is specifically excluded from the CSRA framework. 5 U.S.C. § 7511(b)(7); see also Broida, supra note 5 at 2004-05; Bussey, id. at 121
 
 
 [18]
 The district court does not discuss the other jurisdictional bases upon which Andersen relies in his complaint. The analysis with respect to Section 1331 and Section 1361 jurisdiction is, in any event, the same as that for APA jurisdiction. See Bush, 462 U.S. at 374, 390 (no jurisdiction under 28 U.S.C. § 1331); McAuliffe, 966 F.2d at 979 (same); Stephens, 901 F.2d at 1576 (no jurisdiction under 28 U.S.C. § 1361); Ryon, 894 F.2d at 205 (same)