Margaret DALY–MURPHY,
Plaintiff-Appellant,

v.

Michael WINSTON, E. Carmack Holmes, Arthur S. Kling, Ronald L. Nelson and the Veterans Administration, Defendants-Appellees.

No. 85–5581.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1985.

Decided July 1, 1987.

Mary Ann Murphy, Los Angeles, Cal., for defendants-appellees.

Bruce M. Stark, Long Beach, Cal., for plaintiff-appellant.

Before WALLACE, HUG and HALL, Circuit Judges.

HUG, Circuit Judge:

Daly-Murphy appeals from a summary judgment denying (1) her claims that the suspension of her clinical privileges at a Veterans Administration hospital was in violation of the Administrative Procedures Act and the Privacy Act; (2) her claims against her supervisors for violations of her constitutional rights under *Bivens* and 42 U.S.C. § 1983 (1982); and (3) her claims for libel under state law. We affirm.

## FACTS

Appellant Dr. Daly-Murphy has been employed by the Veterans Administration ("VA") since 1976, primarily as an anesthesiologist; at the time this case arose, she worked at the Veterans Administration Medical Center in Sepulveda, California ("Medical Center"). The official capacity of each of the named individual defendants is as follows: Dr. Ronald L. Nelson, Director of the Medical Center; Dr. Arthur S. Kling, Chief of Staff; and Dr. E. Carmack Holmes, Chief of Surgical Services. On December 16, 1983, Dr. Michael S. Winston was appointed Acting Section Chief of Anesthesiology.[1] Conflicts between Winston and Daly-Murphy concerning appropriate

procedures and Daly-Murphy's administration of anesthesia developed almost at once, and continued throughout the next two months. Matters came to a head during an operation performed on February 22, 1984, when an altercation occurred between Winston and Daly-Murphy regarding Winston's remarks to a nurse under Daly-Murphy's supervision. Although the cause of the altercation is disputed, all parties agree that she left the operating room in the middle of the operation and went immediately to the Chief of Staff to protest Winston's actions.

Early the next morning, Winston provided Holmes with a report on Daly-Murphy's actions during the prior two months and also described her departure from the operating room the day before. Holmes then temporarily suspended Daly-Murphy's clinical privileges at the Medical Center, effective immediately.

Under Articles VIII and IX of the Medical Center's Rules, Regulations, and By-laws (the "bylaws"), Daly-Murphy was entitled to appeal her suspension. She did so, and an Ad Hoc Committee of the Clinical Executive Board ("AHCCEB") met, reviewed the letter of suspension, and concluded that Holmes had sufficient information to justify Daly-Murphy's suspension. Daly-Murphy then requested the next step under the bylaws—the convening of an Ad Hoc Appeals Committee ("AHAC"). Before the date on which the AHAC was scheduled to hold its hearing, Daly-Murphy filed with the district court a complaint, a motion for a temporary restraining order, and a motion for a preliminary injunction to enjoin the hearing. The district court denied the temporary restraining order and the preliminary injunction.

Several days of AHAC hearings were then held. Daly-Murphy contends that her counsel was not allowed to cross-examine all witnesses, and that when she requested a copy of the transcript, the request was denied on the ground that peer review proceedings such as these were confidential. The AHAC upheld the temporary suspen-

---

1. Dr. Winston has since resigned.

sion and recommended that it be made permanent unless Daly-Murphy transferred to another facility and entered a program to improve her interpersonal skills. Daly-Murphy appealed to the Director ("Nelson"), who upheld the recommendation of the AHAC.

Meetings between the parties continued over the summer, but attempts to resolve the situation were unsuccessful. On October 4, Nelson gave Daly-Murphy until November 1 to decide whether to comply with the AHAC recommendations. When she decided not to do so, her privileges were permanently suspended.

Daly-Murphy then filed with the district court a motion for partial summary judgment and, on the same day, defendants filed a motion to dismiss or, in the alternative, for summary judgment. A hearing was held, and the court denied Daly-Murphy's motion and granted defendants' motion for summary judgment.

Daly-Murphy now appeals the district court's judgment. In addition, in her reply brief, she asks this court to consider the investigative report issued in her separate administrative complaint under Title VII of the Civil Rights Act.[2] We will first consider this request, and then address each of Daly-Murphy's claims in order.

### STANDARD OF REVIEW

A grant of summary judgment is reviewed *de novo. Nevada v. United States,* 731 F.2d 633, 635 (9th Cir.1984); *Lojek v. Thomas,* 716 F.2d 675, 677 (9th Cir.1983). An appellate court's review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). *Twentieth Century-Fox Film Corp. v. MCA, Inc.,* 715 F.2d 1327, 1328 (9th Cir.1983); *M/V American Queen v. San Diego Marine Constr. Corp.,* 708 F.2d 1483, 1487 (9th Cir.1983). The reviewing court must determine whether there is any genuine issue of material fact and whether the substantive law was correctly applied. *Amaro v. Continental Can Co.,* 724 F.2d 747, 749 (9th Cir.1984); *Lojek,* 716 F.2d at 677; *see* Fed.R.Civ.P. 56(c).

### I.

### *The EEO Investigative Report*

■ As noted above, Daly-Murphy asks this court, in her reply brief, to consider the information contained in the Investigative Report and Recommendation submitted by the investigator assigned to Daly-Murphy's discrimination complaint under Title VII of the Civil Rights Act. The investigator submitted her report to the Medical Center EEO Office on December 21, 1984, and appellant's counsel received a copy in June, 1985. There is no indication in the record of the current status of Daly-Murphy's Title VII complaint.

Federal Rule of Appellate Procedure 10 governs the record on appeal. Rule 10(e) provides in part that

If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the district court either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted.

This circuit has construed this provision narrowly, holding that normally the reviewing court will not supplement the record on appeal with material not considered by the trial court. *Karmun v. C.I.R.,* 749 F.2d 567, 570 (9th Cir.1984), *cert. denied,* —— U.S. ——, 106 S.Ct. 66, 88 L.Ed.2d 53 (1985); *United States v. Canon,* 534 F.2d 139, 140 (9th Cir.) (per curiam), *cert. denied,* 429 U.S. 991, 96 S.Ct. 2202, 48 L.Ed.2d 815 (1976). *See also Foster v. C.I.R.,* 756 F.2d 1430, 1434 n. 2 (9th Cir. 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 793, 88 L.Ed.2d 770 (1986).

Here, the evidence contained in the Investigative Report was not considered by the trial court because it was submitted

---

**2.** Daly-Murphy has also filed a complaint with the Merit Systems Protection Board's Office of the Special Counsel under the "whistleblower" provisions of 5 U.S.C. § 1206 (1982).

after the summary judgment hearing. Moreover, a review of the record shows, as appellees contend, that the witnesses interviewed by the EEO investigator could have been interviewed by appellant's counsel prior to the summary judgment hearing, and thus any evidence developed in this manner could have been presented to the court. Therefore, we deny Daly-Murphy's request to consider the EEO Report in our review of this case.

## II.

### Claim Under the Administrative Procedures Act

Daly-Murphy alleges that the VA's actions against her, under the peer review procedures established by the bylaws, violated the Administrative Procedures Act, 5 U.S.C. §§ 701–706 (1982 & Supp. III 1985) ("APA"), because the VA exceeded its statutory authority in establishing the peer review procedures as part of the disciplinary process. She also argues that these procedures denied her due process. Appellees contend that the VA acted within its authority in establishing the peer review procedure and that the procedures do not violate any due process rights. They further contend that dismissal of this claim was proper because Daly-Murphy has not exhausted her administrative remedies as required by 5 U.S.C. § 704 (1982).

**A.** *The Validity of the Administrative Process*

■ Daly-Murphy contends that the peer review procedure established by the bylaws is invalid and in conflict with 38 U.S.C. § 4110 (1982 & Supp. III 1985), which establishes a disciplinary procedure for general medical and surgical ("GM & S") personnel in VA facilities. Appellees argue that the peer review is the first step of a three-step process which culminates in a section 4110 proceeding. According to the appellees, this process begins with a preliminary investigation or a peer review proceeding at the local level to determine whether to forward the case to VA headquarters in Washington, D.C. for possible action under section 4110. If this occurs,

the second step consists of a Central Office Screening Committee ("COSC") review to determine whether formal charges should be brought. Finally, if charges are brought, the individual may request a hearing before a section 4110 disciplinary board.

Under 38 U.S.C. § 4115 (1982), the VA's Chief Medical Director has the authority to promulgate regulations "necessary to the administration of the Department of Medicine...." These regulations are contained in the VA Personnel Manual and Department of Medicine and Surgery Supplements. The VA manual requires that hospitals meet or exceed Joint Committee of Accreditation of Hospitals ("JCAH") standards; these standards, in turn, require that hospitals establish procedures, including peer review, for use in cases involving suspension of privileges. The Medical Center's bylaws, which provide for peer review followed by a final decision by the Medical Center Director, were established pursuant to the VA Manual requirement and the JCAH standards. The VA Manual also indicates that when a station head (here, Dr. Nelson, the Director of the Medical Center) requests the suspension of an employee, this request is to be referred to the COSC for screening, and to a disciplinary board if charges are brought against the individual.

The November 23, 1984 affidavit of Michael Sullivan, the Administrative Assistant to the Chief of Staff of the Medical Center, elaborated upon the procedure followed by the hospital, and attached as exhibits the bylaws and the only portions of the VA Manual in the record dealing with disciplinary actions. The complete manual is not contained in the record and, thus, we must rely upon the accuracy of these exhibits as being the applicable provisions of the VA Manual then in effect. The Sullivan affidavit states in paragraph 8:

The peer review procedures outlined in Articles VIII and IX of the Rules, Regulations and By-Laws are not disciplinary proceedings. They are the mechanism by which V.A. Medical Centers can perform investigations to determine whether

to forward a particular case to the Veterans Administration in Washington, D.C. for possible institution of a letter of charges and a hearing pursuant to 38 U.S.C. § 4110. To date, no disciplinary action has been taken against Dr. Murphy. She is still on full pay status.

This is substantiated by Article II, Section 2(4) of the bylaws, detailing the responsibilities of the medical staff. Section 2(4) provides that the staff has the responsibility "[t]o recommend, *consistent with established V.A. procedures,* corrective actions with respect to practitioners and/or specified professional personnel, when warranted" (emphasis added). It is further substantiated by Article VIII, Section 1(a), dealing with corrective actions, which states:

a. Whenever the activities or professional conduct of any practitioner or specified professional person with clinical/practice privileges are considered to be lower than the standards or aims of the medical staff, or are considered to be disruptive to the operations of the medical center, corrective action against such alleged individual[s] may be instituted. *Such action will follow prescribed V.A. regulations relevant to disciplinary action, suspension or revocation.*

(Emphasis added.)

These provisions are consistent with Chapter 8, Sections A.5.c(1) and (2) of the VA Manual, which state:

(1) The Medical Officer, highest in authority at the station, will assure that a thorough preliminary inquiry is conducted to obtain all of the facts prior to the official initiation of a request for proposed action, including those facts relating to the employee's view in the matter. When initiating proposed disciplinary action more severe than admonishment or reprimand, the station [head] will forward the preliminary inquiry and any pertinent comments of station officials to the Chief Medical Director for review. If the review shows that the appropriate disciplinary action should be reprimand or less, the Chief Medical Director may take the action or he may refer the mat-

ter, through the Area Medical Director, to the station [head] for action.

(2) When station heads request the removal, demotion, or suspension of an employee through preferment of charges, the request will be evaluated for the Chief Medical Director by a Central Office Screening Committee. The organizational structure of this committee will be similar in nature to that outlined for Disciplinary Boards in paragraph 3 of section C. The Chief Medical Director will appoint all members of the Screening Committee. No person may serve on both a Disciplinary Board and a Screening Committee in handling the same case.

Insofar as this bylaw procedure is utilized as the preliminary inquiry to obtain all of the facts prior to initiating the disciplinary action in accordance with 38 U.S.C. § 4110 and the VA regulations promulgated thereunder, it is consistent with the statute and VA regulations. A temporary suspension while investigating the medical competence of a physician is a reasonable procedure in order to avoid endangering the lives or health of the patients. Thus, the temporary suspension of clinical privileges is a permissible step in the three-step process. A *permanent* suspension of clinical privileges would certainly fit within the definition of "disciplinary action" as contained in Chapter 8, Section A, 8A.03a. of the VA Manual attached to the Sullivan affidavit. That section states: *"A Disciplinary Action*—Is a corrective measure or penalty action taken against an employee for cause involving inaptitude, inefficiency, or misconduct." These were, indeed, the nature of the charges against Daly-Murphy. Before any permanent disciplinary action can be taken against Daly-Murphy, the three-step process must be followed.

According to Chapter 8, Section A.4c of the VA Manual, only the VA Administrator has the authority to suspend, demote, or discharge employees. Field station heads such as Nelson may only request the suspension of an employee, and refer the matter to Washington for COSC screening. *Id.* at section A.5c(1). Because Daly-Mur-

phy has remained on suspended-with-pay status during the pendency of these proceedings, her suspension must be considered as temporary. This is consistent with the appellees' argument adopted by the district court that Daly-Murphy has no due process claim at this point because her administrative remedies have not been exhausted.

### B. *Exhaustion of Administrative Remedies*

■ Appellees contend that because Daly-Murphy has not yet completed the three-step process established by the by-laws, the VA Manual, and 38 U.S.C. § 4110, there has been no final agency action. Thus, they argue, she has failed to state a claim for relief under section 704 of the APA.[3] As our earlier discussion indicates, we find the peer review proceedings at the Medical Center to be only one step of a three-step process culminating in a 38 U.S.C. § 4110 disciplinary hearing. Thus, it is evident that Daly-Murphy has not yet exhausted her administrative remedies as required by section 704 of the APA; the question is whether she should be required to do so before seeking relief from the court.

In *United Farm Workers v. Arizona Agr. Employment,* 669 F.2d 1249 (9th Cir. 1982), we stated that:

"Under normal circumstances, a party must exhaust its remedies before it can obtain judicial review of an agency decision." ... The purpose of the exhaustion doctrine is to allow the administrative agency in question to exercise its expertise over the subject matter and to permit the agency an opportunity to correct any mistakes that may have occurred during the proceeding, thus avoiding unnecessary or premature judicial intervention into the administrative process.... There are several exceptions to the exhaustion requirement, however. Exhaustion of administrative remedies is not required where the remedies are inadequate, inefficacious, or futile, where pursuit of them would irreparably injure the plaintiff, or where the administrative proceedings themselves are void.... Unless it is specifically required by statute, application of the doctrine of exhaustion of administrative remedies is within the sound discretion of the district court.... We will not disturb a district court's determination of whether exhaustion is required unless there has been a clear abuse of this limited discretion.

*Id.* at 1253. (Citations omitted.) *See also Marshall v. Burlington Northern, Inc.,* 595 F.2d 511, 513 (9th Cir.1979); *Marshall v. Able Contractors, Inc.,* 573 F.2d 1055, 1057 (9th Cir.) (per curiam), *cert. denied,* 439 U.S. 826, 99 S.Ct. 98, 58 L.Ed.2d 119 (1978); *State of California ex rel. Christensen v. F.T.C.,* 549 F.2d 1321, 1323 (9th Cir.), *cert. denied,* 434 U.S. 876, 98 S.Ct. 227, 54 L.Ed.2d 156 (1977).

As we have discussed, the administrative procedures involved here are valid and no irreparable injury is involved because Daly-Murphy's temporary suspension is with pay. The district court's implicit finding that Daly-Murphy must exhaust her administrative remedies before she could seek relief from the court was not an abuse of discretion.

### III.

### *Privacy Act Claims*

Daly-Murphy requested a copy of the transcript of the peer review proceedings. The VA denied this request on the ground that the transcript is a quality assurance document and hence is confidential under 38 U.S.C. § 3305 (1982 & Supp. III 1985). Daly-Murphy argues that the transcript should be provided to her under the Privacy Act, 5 U.S.C. § 552a (1982 & Supp. III 1985). Appellees maintain that Daly-Murphy is not currently entitled to the transcript because she has not yet made a proper request for it under 5 C.F.R. § 297.203 (1986).

---

**3.** 5 U.S.C. § 704 states, in relevant part, that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."

■ We need not decide whether the transcript of the hearings on Daly-Murphy's suspension is a "medical quality assurance document" or whether Daly-Murphy must be given a copy of it under the Privacy Act. A review of the record reveals that Daly-Murphy has indeed failed to make the request mandated by 5 C.F.R. § 297.203. Entitlement to a document under the Privacy Act cannot be established absent the prescribed request.

■ Daly-Murphy also argues that disclosure of the contents of the February 23 letter suspending her clinical privileges to committee members and witnesses at the peer review proceedings violated her rights under the Privacy Act. Appellees contend that the Privacy Act does not apply to the memorandum because it is not a "record" maintained within a "system of records." We need not determine this question because, even assuming that it was such a record, disclosure of the letter's contents to witnesses and other individuals involved in the peer review proceedings did not violate Daly-Murphy's rights under the Privacy Act. Section 552a(b)(1) (1982 & Supp. III 1985) of the Act allows disclosure of a record to "those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." We have already found that the peer review proceedings are a valid exercise of the VA's authority in the area of medical quality control. Thus, the disclosure of the letter's contents to the doctors and witnesses who participated in the peer review process occurred in the performance of their duties and does not constitute a violation of Daly-Murphy's Privacy Act rights.

## IV.

### *Bivens and Section 1983 Claim*

In her third cause of action, Daly-Murphy contends that the VA and the individual defendants violated her free speech rights under the First Amendment, deprived her of her Fifth Amendment due process rights, and violated her Ninth Amendment privacy rights. She further argues that these alleged violations form the basis of a cause of action under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

■ There is no valid basis for a claim under section 1983, in that Daly-Murphy's allegations are against federal officials acting under color of federal law. Section 1983 provides a remedy only for deprivation of constitutional rights by a person acting under color of law of any state or territory or the District of Columbia. *See Broadway v. Block,* 694 F.2d 979, 981 (5th Cir.1982). Thus, the only possible action is an action under the authority of *Bivens.*

■ The threshold question which arises here is whether the defendants were properly served in their individual capacities. Daly-Murphy's complaint and summons were served on the defendants by leaving them with Dan Flynn, Labor Relations, Authorized Agent at the Medical Center. Appellees argue that while the defendants thus were properly served in their official capacity, appellant did not comply with Federal Rule of Civil Procedure 4(d)(1), which requires personal service of individuals; and thus defendants were not properly served in their individual capacities.

Federal Rule of Civil Procedure 4(d)(1) provides that service will be made

> [u]pon an individual other than an infant or an incompetent person, by delivering a copy of the summons and of the complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

We require "substantial compliance with Rule 4." *Jackson v. Hayakawa,* 682 F.2d 1344, 1347 (9th Cir.1982).[4] Rule 4 has gen-

---

4. While we have held that in certain instances Rule 4 may be "liberally construed so long as a party receives sufficient notice of the complaint," *United Food & Commercial Workers Un-*

erally been construed to mean that service at a defendant's place of employment is insufficient. *Smith v. Western Offshore, Inc.*, 590 F.Supp. 670, 674 (E.D.La.1984); *Guyette v. Stauffer Chem. Co.*, 518 F.Supp. 521, 527 (D.N.J.1981); C. Wright & A. Miller, Federal Practice and Procedure § 1096 (1969). More specifically, where money damages are sought through a *Bivens* claim, personal service, and not service at the place of employment, is necessary to obtain jurisdiction over a defendant in his capacity as an individual. *Micklus v. Carlson*, 632 F.2d 227, 240–41 (3d Cir. 1980).

Thus, we agree with appellees that while serving the defendants at the Medical Center was sufficient to establish jurisdiction over them in their official capacity, it did not suffice to establish jurisdiction over them as individuals.

 The next question that arises is whether Daly-Murphy may maintain a *Bivens* cause of action against her supervisors in their official capacity. The leading case on a federal employee's ability to bring a *Bivens* claim against her supervisors is *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). In *Bush*, the Court reviewed the historical development of job protection for regular General Schedule ("GS") federal employees and concluded that comprehensive statutory and administrative remedies exist. Given these remedies, the Court declined to create a separate cause of action. *Id.* at 388–390, 103 S.Ct. at 2416–2417. We have also adopted the view that judicial review of federal personnel actions is inappropriate when other statutory and administrative remedies exist. *See Veit v. Heckler*, 746 F.2d 508, 511 (9th Cir.1984).

However, as an employee of the VA, Daly-Murphy is not a "GS" employee, but a

General Medical and Surgical ("GM & S") schedule employee. Thus, the question of whether to extend the *Bush* holding to GM & S employees arises. We first note that the administrative remedies available to GM & S employees are less extensive than those available to GS employees.[5] However, we also note that Daly-Murphy has, in addition to her rights under section 4110, several other meaningful statutory and administrative remedies available to her: She may seek relief under 5 U.S.C. § 1206 (the "whistle blower" section of the CSRA, which also applies to GM & S employees), and under Title VII of the Civil Rights Act; in fact, Daly-Murphy has done so. Thus, although Daly-Murphy's remedies may not be as comprehensive as those considered by the *Bush* Court, they afford her sufficient opportunity for relief from the particular wrong she alleges to preclude a *Bivens*-type action against her supervisors in their official capacity. *See also Heaney v. United States Veterans Admin.*, 756 F.2d 1215, 1220 (5th Cir.1985).

 The only remaining question is whether Daly-Murphy may maintain a *Bivens* cause of action against the VA. In *Arnsberg v. United States*, 757 F.2d 971 (9th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986), we found that, absent a waiver of sovereign immunity, an individual may not maintain a *Bivens* action for monetary damages against the United States. *Id.* at 980. Thus, we find that Daly-Murphy did not state a cause of action against the VA under *Bivens*.

## V.

### *State Libel Claim*

 Finally, Daly-Murphy claims that the disclosure of information during the

---

*ion v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir.1984); *Borzeka v. Heckler*, 739 F.2d 444, 447 (9th Cir.1984), these cases are factually inapposite. Further, the "sufficient notice" exception contains a "justifiable excuse" requirement, *Borzeka*, 739 F.2d at 447, which Daly-Murphy has failed to meet.

**5.** The legislative history shows that when Congress created the GM & S schedule, it meant to give the VA the "authority to dispense with the

services of unsatisfactory or disqualified employees ... without the restrictions of the laws and regulations pertaining to civil service." 1945 U.S.Code Cong.Serv. 956. Thus, some of the remedies available to GS employees and considered by the *Bush* Court, such as the Civil Service Reform Act of 1978, ("CSRA") 5 U.S.C. §§ 1101–1207 (1982), generally do not apply to GM & S employees.

peer review proceedings constitute a pendant state claim for libel. However, because we find that the proceedings were valid, and that the information was disclosed in conformity with 5 U.S.C. § 552a(b)(1), there is no basis for a pendant state claim based on these actions.

The judgment of the district court is AFFIRMED.