Arthur **NEWMARK**, M.D., Plaintiff,

v.

Anthony **PRINCIPI**, Secretary, United States Department of Veterans Affairs; The Philadelphia Veterans Affairs Center; Michael Sullivan, Director of the Veterans Affairs Medical Center of Philadelphia; John Murphy, Director of Primary Care; Michael Berkwits, Director of the Emergency Room; Karen Sharrar, Director of the Emergency Room; John Doe Nos. 1–5; Fordell Physician Services, Inc. and Michael Beers, President, Fordell Physician Services, Inc., Defendants.

Civil Action No. 02–6799.

United States District Court, E.D. Pennsylvania.

May 15, 2003.

Alice W. Ballard, Law Office of Alice W. Ballard, PC, Philadelphia, PA, for Plaintiff.

Susan Dein Bricklin, U.S. Attorney's Office, Michael D. Jones, Reed Smith LLP, Philadelphia, PA, for Defendants.

## MEMORANDUM

DuBOIS, District Judge.

Presently before the Court is defendants' Motion to Dismiss Counts IV—VI of Plaintiff's Amended Complaint (Document No. 10, filed March 11, 2003), and the related submissions of the parties. For the reasons set forth below, defendants' Motion is granted.

## I. BACKGROUND

Plaintiff, Arthur Newmark, M.D. ("Dr.Newmark"), began working for the Philadelphia Veterans Affairs Medical Center ("PVAMC") on April 1, 1996 as a physician in the emergency room. He then became a "house physician" in the Geriatrics Department of PVAMC. Complaint ¶ 14. In November 1997, Dr. Newmark received a letter from Earl F. Fallast, who was then the Director of PVAMC, notifying him that his employment with PVAMC would be terminated on December 5, 1997 due to a reorganization of the hospital. *Id.* ¶ 19. Dr. Newmark was terminated on that date.

Shortly after his termination, Dr. Newmark applied to defendant Fordell Physician Services ("Fordell"), which at that time was under contract with PVAMC to "recruit and schedule certain house physicians to work at the hospital," for reemployment as a house physician with PVAMC. *Id.* ¶ 20. He submitted his application directly to defendant Dr. Michael Beers ("Dr.Beers"), President of defendant Fordell. In January 1998, Dr. Beers rejected the application. Efforts by Dr. Newmark to regain employment with PVAMC, from December 1997 to June 1998, by applying to several directors of PVAMC were also unsuccessful.

Dr. Newmark filed formal complaints with the United States Department of Veterans Affairs ("VA") in June and August 1998, alleging that the VA had discriminated against him on the basis of age and had retaliated against him for complaining of such discrimination. Attempts by PVAMC to resolve the matter in December 1998 and January 1999—by offering Dr. Newmark reemployment with PVAMC in exchange for releasing his claims of age discrimination and retaliation against the VA—failed as Dr. Newmark declined to sign the release. *Id.* ¶ 36.

On November 19, 1999, Dr. Newmark filed a *Bivens*[1] action against, *inter alia,* Togo D. West, Jr., then the Secretary of the United States Department of Veterans Affairs, PVAMC, and several officials of PVAMC, alleging violations of his procedural due process, substantive due process, and free speech rights, stemming from his termination on December 5, 1997. On March 31, 2000, Dr. Newmark amended his complaint, adding three claims against one defendant, PVAMC: (a) termination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"); (b) retaliation in violation of the ADEA; and (c) failure to rehire in violation of the ADEA. On August 28, 2000, defendant VA submitted an Offer of Judgment in the amount of $297,154.00 against Togo West, Secretary of the Department of Veterans Affairs, with respect to Dr. Newmark's ADEA claims. Dr. Newmark accepted the Offer on September 29, 2000 and pursuant to the terms of the Offer, dismissed the *Bivens* claims.

On November 21, 2000, Dr. Newmark sent a letter to defendant Fordell requesting that he be referred for employment with PVAMC. Defendants Fordell and Beers did not respond to that request because they thought Dr. Newmark was still litigating his *Bivens* and ADEA claims. *Id.* ¶ 50. Dr. Newmark also sent a letter dated November 21, 2000 to defendant Dr. Michael Sullivan, Director of PVAMC, seeking reemployment with PVAMC. In his letter to Dr. Sullivan, Dr. Newmark requested a review of "all records that would be considered in deciding his applications for employment, for purposes of determining the factual accuracy of all such records." *Id.* ¶ 60. In response, Douglas Stewart, Director of PVAMC's Department of Human Resources Management, sent a letter dated December 22, 2000 to Dr. Newmark directing him to "refer all further inquiries [regarding reemployment] to the" Department of Human Resources Management. *Id.* ¶ 62. Mr. Stewart did not respond to Dr. Newmark's request to review his records and he was not afforded an opportunity to do so.

In addition, Dr. Newmark sent a letter dated November 21, 2000 to defendant Dr. Michael Berkwits, Director of PVAMC's Emergency Room, requesting that "he be credentialed for the Emergency Room moonlighter list." In response, Dr. Berkwits' office notified him that there were "no full-time vacancies, that the PVAMC was temporarily not accepting applications for the moonlighter list, and that [defendant] Dr. [Karen] Sharrar [—then Director of PVAMC's Emergency Room—] would consider [Dr. Newmark's] application when there were openings." *Id.* ¶ 65.

In July 2001, PVAMC hired Dr. Jane Givens, who is "substantially younger than Dr. Newmark," as a full-time staff physician in the Emergency Department. *Id.* ¶ 66. Further, in June and July 2001, four new physicians were added to the PVAMC Emergency Department moonlighter list by defendant Dr. John Murphy, Director of Primary Care. Those newly-hired physicians are also "substantially younger than Dr. Newmark, and none had yet been board certified in Internal Medicine." *Id.* ¶ 68.

Dr. Newmark filed the instant suit on August 16, 2002. In Counts I and II of

---

1. *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *Bivens* established that a civilian has a cause of action for damages against a federal official, in his individual capacity, who, while acting under color of federal law, violates the civilian's constitutional rights. *See Bivens,* 403 U.S. at 397, 91 S.Ct. 1999. *Bivens*-type suits are the federal counterpart of 42 U.S.C. § 1983. *See Paton v. La Prade,* 524 F.2d 862, 871 (3d. Cir.1975).

the Complaint, he alleges that defendants Fordell and Beers wilfully refused to refer him for employment with PVAMC because of his age and "in order to retaliate against him for complaining of age discrimination at the VA," in violation of the ADEA and the Pennsylvania Human Relations Act, 43 P.S. § 957 *et. seq. Id.* ¶¶ 74, 78. In Count III, Dr. Newmark makes similar age discrimination and retaliation claims under the ADEA against the VA and PVAMC. Counts IV through VI are *Bivens* claims against several officials of PVAMC alleging that: (a) they refused to rehire him after September 2000 "in order to retaliate against him for exercising his right to free speech as guaranteed by the First Amendment [in connection with his previous complaints of age discrimination]" (Count IV); (b) they denied him "his statutory right [under the Privacy Act of 1974 [2]] to a meaningful review of his employment records without due process of law" (Count V); and (c) their hiring and retention of non-citizen physicians "when Dr. Newmark was available to work," in violation of 38 U.S.C. § 7407 [3], deprived him of "his liberty interest in preferential physician employment at the VA over non-citizen physicians, without due process and

without rational basis," violating the Fifth Amendment (Count VI). *Id.* ¶¶ 84, 88, 91.

## II. DISCUSSION

Rule 12(b)(6) of the federal rules of civil procedure provides that a defense of "failure to state a claim upon which relief can be granted" may be raised by motion in response to a pleading. Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), a court must take all well pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *See Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969). Only those facts alleged in the complaint may be considered in deciding such a motion. *See ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir.1994). A complaint should be dismissed if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Therefore, the facts alleged in Dr. Newmark's Complaint are accepted as true in deciding this motion.

Defendants argue that Counts IV, V, and VI of the Complaint—the *Bivens*

---

**2.** In Count V, Dr. Newmark cites two provisions of the Privacy Act of 1974, 5 U.S.C. §§ 552a(e)(5) and 552a(f)(4). 5 U.S.C. § 552a(e)(5) provides that "[e]ach agency that maintains a systems of records shall ... maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination.". 5 U.S.C. § 552a(f)(4) states that "each agency that maintains a system of records shall promulgate rules ... which shall establish procedures for reviewing a request from an individual concerning the amendment of any record or information pertaining to the individual, for making a determination on the request, for an appeal within the agency of an initial adverse agency

determination, and for whatever additional means may be necessary for each individual to be able to exercise fully his rights under this section."

**3.** 38 U.S.C. § 7402(c) states, in pertinent part, that "a person may not be appointed in the [VA] to a position [as physician] ... unless the person is a citizen of the United States." 38 U.S.C. § 7407(a) provides, in relevant part, that if "it is not possible to recruit qualified citizens for the necessary services, appointments ... may be made without regard to the citizenship requirements of section 7402(c) ... or of any other law prohibiting the employment of, or payment of compensation to, a person who is not a citizen of the United States."

claims—should be dismissed. That argument is based on the Supreme Court decision in *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). Because the *Bivens* claims arise from Dr. Newmark's employment relationship with the Government and his attempts to regain his position as a physician with PVAMC, defendants contend that, under *Bush,* the *Bivens* claims are barred in view of the remedial scheme provided under the ADEA and "encompassed" in his ADEA claims, Counts I and III.

## A. Exceptions to the *Bivens* Doctrine—*Bush* and its Progeny

In *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held that individuals whose constitutional rights are violated by federal officials may sue those officials for damages in their individual capacities. Although *Bivens* itself dealt only with Fourth Amendment violations, the *Bivens* doctrine has subsequently been extended to cases arising under the Due Process Clause of the Fifth Amendment, *see Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and the First Amendment. *See Paton,* 524 F.2d at 870. The *Bivens* Court cautioned, however, that such a damages remedy should not be made available if there are "special factors counseling hesitation in the absence of affirmative action by Congress," *Bivens,* 403 U.S. at 396, 91 S.Ct. 1999, or "Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the constitution and viewed as equally effective." *Carlson v. Green,* 446 U.S. 14, 19, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (citing *Bivens,* 403 U.S. at 397, 91 S.Ct. 1999) (emphasis in original).

In two cases in the 1980's, the Supreme Court further delineated the "special factors" exception to the *Bivens* doctrine. In

*Bush v. Lucas,* a federal employee brought a First Amendment retaliation claim against the National Aeronautics and Space Administration ("NASA") for his demotion. *Bush,* 462 U.S. at 369, 103 S.Ct. 2404. Bush alleged that he had been demoted because he made public statements that were critical of his supervisors and NASA policies. *Id.* at 369–70, 103 S.Ct. 2404. The Supreme Court concluded that Bush could not maintain his First Amendment *Bivens* claims against NASA because Congress had established an "elaborate remedial scheme"—the Civil Service Reform Act of 1978 ("CSRA")—through which federal employees could seek redress for constitutional violations—including First Amendment violations—related to their federal employment:

> Because [plaintiff's] claims arise out of an employment relationship that is governed by the comprehensive procedural and substantive provisions [of the CSRA] giving meaningful remedies against the United States, we conclude that it would be inappropriate for us to supplement that regulatory scheme with a new judicial remedy.

*Id.* at 368, 103 S.Ct. 2404. The Court reasoned that Congress was in "a far better position than a court" to decide whether federal employees should have a *Bivens* cause of action when those federal employees have an administrative remedy available under the CSRA. *Id.* at 389, 91 S.Ct. 1999. The ruling in *Bush* was based on the Court's determination that the comprehensive remedial scheme provided by the CSRA to federal employees to address constitutional violations arising out of their employment—although not an "equally effective substitute" for the damages remedy Bush sought—constituted a "special factor" sufficient for the Court to decline from creating a judicially-fashioned *Bivens* remedy. *Id.* at 388–90, 91 S.Ct. 1999.

In *Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), the Supreme Court considered whether a damages remedy under *Bivens* should be made available for alleged due process violations in connection with the denial of Social Security benefits. *See Schweiker,* 487 U.S. at 420, 108 S.Ct. 2460. Because a damages remedy was not "included in the elaborate remedial scheme devised by Congress" to address the improper denial of Social Security benefits,[4] the Court, based on *Bush,* refused to recognize such a remedy against federal officials. *Id.* at 414, 108 S.Ct. 2460. The Court explained:

> [T]he concept of "special factors counseling hesitation in the absence of affirmative action by Congress" has proved to include an appropriate judicial deference to indications that congressional inaction has not been inadvertent. When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations .that may occur in the course of its administration, we have not created additional *Bivens* remedies.

*Id.* at 423, 108 S.Ct. 2460. Although noting that the remedial structure did not provide plaintiffs with "complete relief" and that the "creation of a *Bivens* remedy would obviously offer the prospect of relief for injuries that must now go undressed," the Court concluded that "Congress . . . has not failed to provide meaningful safeguards or remedies for the rights of" plaintiffs, and deferred to Congressional intent in balancing issues of governmental efficiency and individual rights as expressed in the Social Security Act. *Id.* at 424, 425, 91 S.Ct. 1999.

**B. Remedial Schemes Available to Dr. Newmark and Special Factors Counseling Against Implying a *Bivens* Remedy**

Dr. Newmark asserts that *Bush* is inapplicable because the remedial scheme available to him under the ADEA is not as comprehensive as the "elaborate remedial scheme"—the CSRA—analyzed in *Bush.* According to Dr. Newmark, the ADEA "at best . . . provides a remedy only for retaliation in connection with an ADEA claim alone." Pl's Resp. at 6. Moreover, he argues that "Congress has created no scheme to remedy federal agents' retaliatory conduct against ex-employees who have engaged in protected activity like that alleged by Dr. Newmark." He asserts that the remedial scheme provided under the CSRA "has nothing to do with his case" because he "was never a civil service employee," "nor are there special factors that would counsel against a *Bivens* action." *Id.*

Although the Court agrees that the CSRA is inapplicable to this case, it rejects Dr. Newmark's argument that *Bush* is inapposite. For the reasons set forth below, the Court concludes that the remedial schemes available to Dr. Newmark to address his constitutional claims—Title 38, the Privacy Act of 1974, and the ADEA [5]—although arguably not "equally effective substitutes" to the judicial remedy he seeks—constitute "special factors" barring the Court from implying a *Bivens* remedy for his alleged constitutional injuries.

**1. *The Remedial Scheme for VA Physicians***

■ As a VA physician, Dr. Newmark was not a civil service employee subject to

---

4. This remedial scheme provided for the retroactive restoration of improperly-withheld benefits, but it did not provide damages for emotional distress suffered because of the improper termination of benefits.

5. The Court notes that the parties only discussed the remedial scheme provided under the ADEA and whether that scheme constitutes a "special factor" precluding Dr. Newmark's *Bivens* claims.

the terms of the CSRA[6], but a General Medical and Surgical ("GM & S") schedule employee subject to the internal disciplinary rules of the Veterans Health Administration ("VHA") which are specifically designed to offer less protection than the CSRA. *See Heaney v. United States Veterans Admin.,* 756 F.2d 1215, 1218 (5th Cir. 1985) (discussing the rules of the Department of Medicine and Surgery ("DMS") of the VA, renamed the VHA). In passing the legislation which established the VA's hospitals and health-care facilities, Congress was "well aware of the special nature of professionals—physicians, dentists, and surgeons. Title 38 of the United States Code, which deals with the VA, is replete with examples of special treatment for professionals in the DMS [now VHA]. Their pay scales are different; their appointments are more discretionary; and they are exempted from other civil service requirements for qualifications. In addition, administrators are allowed more discretion in disciplining and discharging employees under the DMS regulations than is allowed to administrators under the CSRA." *Id.* (internal citations omitted).

"The fact that VA procedures governing employee discipline, grievances, and the like are not the same as those under the CSRA is not in itself dispositive of whether *Bush* applies to this case." *Gregor v. Derwinski,* 911 F.Supp. 643, 646 (W.D.N.Y. 1996). Several Courts of Appeals have addressed the applicability of *Bush* to *Bivens* claims by VA physicians, and have concluded that the administrative remedial procedures in Title 38 and DMS (now VHA) regulations bar a *Bivens*-type action. Those courts ruled that *Bush* was applicable to VA cases notwithstanding the fact that the VA administrative scheme was not as comprehensive as that under the CSRA.

*Heaney v. United States Veterans Admin.,* 756 F.2d 1215 (5th Cir.1985) involved a VA physician who brought a *Bivens* action against the VA and certain VA officials arising from the revocation of his surgical privileges. The court in that case, after summarizing the three-step disciplinary process for physician conduct established pursuant to 38 U.S.C. § 4110, stated that the VA remedial schemes "were specifically designed to offer less protection than the CSRA." *Id.* at 1218. Nonetheless, noting that "Congress 'wanted to give the [VA] authority to employ or discharge [physicians] without the usual time consuming and detailed service procedures,'" the court stated that "to allow a nonstatutory remedy here would have some effect tending to upset the balance between the interests of maintaining quality medical personnel and the protection of constitutional rights struck by Congress in creating the DMS." *Id.* at 1219 (quoting *Orloff v. Cleland,* 708 F.2d 372 (9th Cir.1983)).

The plaintiff in *Heaney* argued that his *Bivens* action was not barred by *Bush* because *Bush* held that a damages claim is precluded only where the alternative remedy is "meaningful" and that the relief available to him under the DMS—reinstatement of his surgical privileges—was not "meaningful redress" for the alleged

---

**6.** A physician appointed to the Veterans Health Administration under 38 U.S.C. § 7401(1) is an "excepted service" employee. This is because VA physicians are appointed "without regard to civil-service requirements." *Id.* § 7403(a). The qualifications for appointed VA physicians do not include a competitive examination. *See id.* § 7402(b) (providing that only a medical degree, completed internship, and license to practice medicine is required). Such physicians are thus not in the "competitive service," 5 U.S.C. § 2102, but a part of the "excepted service." *Id.* § 2103(a). Therefore, members of the excepted service are not entitled to CSRA protections for competitive service employees. *See id.* §§ 7501–7504.

violations of his First and Fifth Amendment rights. The court rejected that argument and held that reinstatement under the DMS scheme offers an "adequate measure of relief ... where an adverse personnel decision is found to be unconstitutional ... enough to preclude a damages remedy." *Id.* at 1221. The court also rejected the plaintiff's assertion that *Bush* was limited to civil service employees because the procedural safeguards available under the DMS regulations are "less elaborate" than those of the CSRA, *id.* at 1222 n. 3, stating that:

> Bush's review of the history and details of the CSRA is best read to point out that Congress is capable of constructing an appropriate system of employee redress, more capable than are the courts ... Congress has chosen to exercise its special expertise and prerogative by providing a less protective system for [VA] medical personnel than for ordinary civil servants, and that is precisely the kind of decision that *Bush* acknowledges the legislature is in the better position to make than are the courts.

*Id.* The court then concluded that the DMS regulatory scheme constituted a special factor counseling against authorizing a damages remedy and accordingly dismissed plaintiff's *Bivens* claims. *See id.* at 1220.

The Tenth Circuit followed the reasoning of *Heaney* in *Franks v. Nimmo,* 796 F.2d 1230 (10th Cir.1986), in which a VA physician asserted constitutional claims against VA officials, alleging that they had improperly treated him as a "probationary employee" in conducting termination procedures, or in the alternative, that they had failed to follow the proper procedures for termination of probationary employees. He sought damages for alleged deprivation of his rights to due process and free speech. The court held that "the implied cause of action Dr. Franks seeks to assert is barred by the rationale applied in

*Bush." Franks,* 796 F.2d at 1238. The court rejected the plaintiff's argument that *Bush* was inapposite because he was not a civil service employee, stating that "this argument is unpersuasive in view of the administrative procedures that Congress has provided to these [VA] employees, and the Court's conclusion in *Bush* that the administrative remedy need not fully compensate the employee to be exclusive." *Id.* at 1239.

In reviewing the administrative procedures under Title 38 for probationary VA physicians, the *Franks* court noted that such physicians who are "separated from service ... may obtain judicial review of [that] administration decision" pursuant to the Administrative Procedure Act ("APA"). *Id.* at 1239. Under the APA, such a decision may be set aside by a federal court if it is "arbitrary or capricious, or unconstitutional," and a physician who has been wrongfully discharged may obtain relief in that court in the form of reinstatement and backpay. *Id.* at 1239–40 (citations omitted). Finding that "[a]s in *Bush,* a plaintiff such as Dr. Franks has a forum in which to present constitutional claims, may receive judicial review of the administrative proceedings, and may obtain meaningful relief in the form of reinstatement and back pay," the court concluded that *Bush* precluded his *Bivens*-type suit. *Id.* at 1240.

The Ninth Circuit reached a similar conclusion in *Berry v. Hollander,* 925 F.2d 311 (9th Cir.1991), in which a VA pathologist alleged that defendant VA employees had denied him his due process and free-speech rights in an "alleged conspiracy to drive [him] from his job" resulting from his charges of surgical malpractice. *Berry,* 925 F.2d at 313. Plaintiff in *Berry* contended that because defendants' actions in disciplining him did not take place during a "statutorily authorized dismissal pro-

ceeding," where the alleged wrongs might have been remedied in the course of routine review, he had no administrative remedy, and therefore *Bush* did not apply to bar his claims. *Id.* at 315. Rejecting that argument, the court noted that the plaintiff was entitled to, *inter alia,* certain grievance and hearing procedures under DMS regulations and judicial review under the APA, and stated that:

> Although these remedies do not guarantee full and independent compensation for constitutional violations suffered by a VA physician, they do indicate a congressionally-authorized and comprehensive remedial scheme sufficient to preclude additional forms of relief. "Where Congress has designed a program that provides what it considers adequate remedial mechanisms for constitutional violations, *Bivens* actions should not be implied." To allow Berry's [*Bivens* ] action would eviscerate the Supreme Court holdings in *Bush* and *Chilicky,* which we cannot sanction.

*Id.* at 315–16 (quoting *Kotarski v. Cooper,* 866 F.2d 311, 312 (9th Cir.1989)).

"[C]ourts must withhold their power to fashion damages remedies when Congress has put in place a comprehensive system to administer public rights, has 'not inadvertently' omitted damages remedies for certain claimants, and has not plainly expressed an intention that the courts preserve *Bivens* remedies." *Spagnola v. Mathis,* 859 F.2d 223, 228 (D.C.Cir.1988). Following *Heaney, Franks,* and *Berry,* the

Court concludes that such a system is in place in the instant case. *See also Maxey v. Kadrovach,* 890 F.2d 73, 75–76 (8th Cir. 1989); *Daly–Murphy v. Winston,* 820 F.2d 1470, 1478 (9th Cir.1987). Given that Dr. Newmark's *Bivens* claims—of First and Fifth Amendment violations in Counts IV, V, and VI—arise out of an employment relationship with PVAMC, and that Congress has provided a remedial scheme to address "major adverse [personnel] actions"[7] against medical professionals employed by VA hospitals—in Title 38 and VHA (formerly DMS) regulations—those claims are precluded by *Bush* and its progeny.[8] *See Maniktahla v. John J. Pershing VA Medical Center,* 967 F.Supp. 379, 382 (E.D.Mo.1997) (holding that Title 38 is a "comprehensive remedial scheme ... sufficient to preclude additional forms of relief, although it does not guarantee full compensation for any constitutional violations suffered by a VA physician") (citing *Berry,* 925 F.2d at 315).

### 2. *The Remedial Scheme Under the Privacy Act*

■ Count V of the Complaint alleges that defendants refused to permit Dr. Newmark to review his personnel records. It is styled as a *Bivens*-type action claiming a violation of due process and is based on two provisions of the Privacy Act of 1974.[9] The Court concludes the remedial scheme provided under the Privacy Act

---

**7.** A "major adverse action" is defined as an adverse personnel action, including discharge. 38 U.S.C. § 7461(c)(2)(E).

**8.** Dr. Newmark's employment was terminated because of a reorganization of PVAMC and not "out of a question of professional conduct or competence"—*i.e.,* related to direct patient care or clinical competence. *See* 38 U.S.C. § 7461(c)(2)(E). Thus, his claims of alleged retaliation and non-preferential hiring are governed by the grievance procedures of 38

U.S.C. § 7463. *See Khan v. United States,* 201 F.3d 1375, 1379–80 (Fed.Cir.2000); *Pathak v. Dep't of Veterans Affairs,* 274 F.3d 28, 32 (1st Cir.2001). The Court notes that those procedures were not invoked by Dr. Newmark to address the allegations stated in Counts IV and VI. The Court's dismissal of those Counts is without prejudice to Dr. Newmark's right to pursue any available remedies under Title 38 and VHA regulations.

**9.** *See supra* note 2.

bars Dr. Newmark from going forward with that *Bivens* claim.

The Privacy Act regulates the "collection, maintenance, use, and dissemination of information concerning individuals," *Cardamone v. Cohen*, 241 F.3d 520, 524 (6th Cir.2001), and provides a private right of action against federal agencies for violations of that Act. *See* 5 U.S.C. § 552a(g)(1). Although "[i]t is true that Congress did not explicitly declare the Privacy Act to be either a substitute for an action directly under the Constitution or an exclusive remedy," *Downie v. City of Middleburg Heights*, 301 F.3d 688, 697 (6th Cir.2002), courts have held that the Privacy Act is a comprehensive legislative scheme that provides a meaningful remedy sufficient to constitute a "special factor" barring a separate damages remedy under *Bivens*. *See, e.g., id.; Robinson v. United States Dept. of Educ.*, Civ. A. No. 87–2554, 1988 WL 22292, at *4 (E.D.Pa. Mar. 8, 1988) (holding that "*Bivens* does not give plaintiff the right to sue agency employees under the Privacy Act"); *Khalfani v. Secretary, Dept. of Veterans Affairs*, No. 94–CV–5720 (JG), 1999 WL 138247, at *7 (E.D.N.Y. Mar.10, 1999) (collecting cases); *Sullivan v. United States Postal Serv.*, 944 F.Supp. 191, 195 (W.D.N.Y.1996) (stating that a " 'comprehensive scheme' for dealing with privacy violations exists in the Privacy Act"). According to one court:

> [T]he Privacy Act provides a comprehensive scheme for addressing plaintiff's concerns about the inaccuracy of the records and about disclosure of them to third parties. In establishing the Privacy Act, Congress has undertaken to balance the individual interests of the subjects with the interest in protecting certain records and assuring an efficient government. Therefore, pursuant to the *Bush* mandate that courts should refrain from implying a *Bivens* remedy when "special factors" counseling hesitation, such as Congressionally-provided remedies of constitutional violations, are present, the Court concludes that plaintiff's constitutional claims regarding her records and any disclosures by defendants about those records are barred.

*Mittleman v. United States Treasury*, 773 F.Supp. 442, 454 (D.D.C.1991) (citing *Bush*, 462 U.S. at 378, 103 S.Ct. 2404); *see also Patterson v. F.B.I.*, 705 F.Supp. 1033, 1045 n. 16 (D.N.J.1989). The Court finds those decisions instructive and concludes that, based on the comprehensive remedial scheme provided by Congress in the Privacy Act, Dr. Newmark may not bring an implied *Bivens* action for alleged constitutional violations stemming from his unanswered requests to review his employment records with PVAMC.[10]

### 3. *The Remedial Scheme Under the ADEA*

■ Because the Court has concluded that the remedial schemes available to Dr. Newmark—Title 38 and VHA regulations and the Privacy Act—are sufficient and meaningful to constitute "special factors"

---

**10.** 5 U.S.C. § 552a(d)(1) of the Privacy Act provides that "[e]ach agency that maintains a system of records shall ... upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany him, to review the record and have a copy made of all or any portion thereof in a form comprehensible to him, except that the agency may require the individual to furnish a written statement authorizing discussion of that individual's record in the accompanying person's presence." 5 U.S.C. § 552a(g)(1)(B) permits an individual to bring a civil action against an agency that refuses to comply with an individual request under § 552a(d)(1). The Court's dismissal of Count V is without prejudice to Dr. Newmark's right to pursue any available remedies under the Privacy Act.

barring Counts IV—VI of the Complaint, the Court need only note that, to the extent Count IV can be construed as a damages claim for retaliation sounding in age discrimination, similar to the claims in Counts I and III, that *Bivens* claim is further barred by the comprehensive remedial scheme of the ADEA. *See Bumpus v. Runyon*, No. 94 Civ. 2570(DC), 1997 WL 154053, at *6 (S.D.N.Y. Apr.2, 1997) (holding that "to the extent [plaintiff's] constitutional claims arise out of the alleged [age] discrimination against plaintiff, those claims are barred by ... the ADEA") (citing *Brown v. General Services Admin.*, 425 U.S. 820, 825, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)); *Tapia–Tapia v. Potter*, 322 F.3d 742, 745 (1st Cir.2003) ("To the extent that [plaintiff's constitutional] claims are a mere restatement of his age discrimination claim, they are not justiciable. The ADEA provides the exclusive federal remedy for age discrimination in employment.").

The Third Circuit has held that Congress intended the ADEA to preempt *Bivens* claims against agency officials for age discrimination in federal employment. *See Purtill v. Harris*, 658 F.2d 134, 137–38 (3d Cir.1981) (analyzing *Bush* and holding that "in light of the existence of ADEA remedies the [federal] employer-employee relationship ... is a special factor that counsels hesitation in recognizing a constitutional cause of action absent affirmative contrary indications from Congress."); *Madden v. Runyon*, 899 F.Supp. 217, 225 (E.D.Pa.1995) (stating that "the exclusive remedy for federal employment age discrimination is the ADEA" and barring plaintiff's *Bivens* claim that "merely mirrors his claims under ... the ADEA") (citing *Purtill*, 658 F.2d at 137).

### 4. The Federal Employment Relationship

■ Dr. Newmark argues that *Bush* and its progeny—and thus the remedial

schemes of Title 38, the Privacy Act, and the ADEA—do not apply because he no longer works for the VA; that "at the point when his constitutional rights were violated, [he] was no longer employed by the government at all." Pl's Resp. at 4. The Court rejects that argument. To the extent that Dr. Newmark claims his constitutional injuries occurred after his employment was terminated, the Court "look[s] to whether the [*Bivens* ] claim[s] arose from the employment context." *Tippetts v. United States*, 308 F.3d 1091, 1095 (10th Cir.2002).

In this case, the *Bivens* claims—involving alleged constitutional violations after Dr. Newmark's employment relationship with PVAMC was terminated—arose from that employment relationship. Dr. Newmark's former position as a physician of the VA is inextricably linked with his *Bivens* claims, and "it is this employment relationship that the Supreme Court emphasized in *Bush* and its progeny, rather than the nature of the specific violation involved." *Lombardi v. Small Business Admin.*, 889 F.2d 959, 961 (10th Cir.1989) (holding that plaintiff's *Bivens* claims were precluded by CSRA because the actions complained of arose from a federal employment relationship even though the alleged violations occurred after the employment relationship was terminated); *Cox v. Henzy*, No. CIV.A. 96–583, 1997 WL 164270, at * 2 (E.D.Pa. Apr.1, 1997) ("The employment relationship, rather than the nature of the specific violations involved, is the 'special factor' arguing against the creation of an additional [*Bivens* ] remedy"); *Cleary v. United States Marshal's Serv.*, No. C95–6825, 1998 WL 246445, at *4 (N.D.Ill. Apr.20, 1998) (precluding plaintiff's *Bivens* claims because the federal employment actions against him "and the alleged constitutional violations are inextricably intertwined").

It is of no import that the alleged constitutional violations in Counts IV—VI occurred after the termination of Dr. Newark's employment with PVAMC. "The salient fact here is that the wrongful acts [Dr. Newmark] alleges were taken against [him] arose out of [his] federal employment relationship." *Hall v. Clinton,* 235 F.3d 202, 205 (4th Cir.2000), *cert. denied,* 532 U.S. 995, 121 S.Ct. 1656, 149 L.Ed.2d 639 (2001). Because his *Bivens* claims against the individual defendants "relate[ ] exclusively to the effect of their actions on *subsequent* federal employment decisions against him, it would be inappropriate to circumvent" the remedial schemes of Title 38, the Privacy Act, and the ADEA by creating a *Bivens* remedy in this case. *Tahy v. United States,* 189 F.3d 478 (10th Cir.1999) (unpublished table decision) (emphasis added). Accordingly, Dr. Newmark cannot proceed with his *Bivens* claims.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that there is no basis for departing from the rule set forth in *Bush* and its progeny that the existence of a meaningful remedial scheme providing remedies for a plaintiff's alleged constitutional violations constitutes a "special factor" barring a plaintiff from asserting *Bivens*-type claims. Because of the meaningful remedial schemes provided in Title 38, VHA regulations, the Privacy Act, and the ADEA, Dr. Newmark is precluded from asserting *Bivens*-type claims. Accordingly, the Court determines that Counts IV, V, and VI of the Complaint are barred and grants defendants' Motion to Dismiss those Counts.

An appropriate Order follows:

### ORDER

**AND NOW,** this 15th day of May, 2003, upon consideration of defendants' Motion to Dismiss Counts IV—VI of Plaintiff's Amended Complaint (Document No. 10,

filed March 11, 2003), and the related submissions of the parties, for the reasons set forth in the attached Memorandum, **IT IS ORDERED** as follows:

(1) Defendants' Motion to Dismiss Counts IV and VI of Plaintiff's Amended Complaint is **GRANTED** and Counts IV and VI of plaintiff's Amended Complaint are **DISMISSED WITHOUT PREJUDICE** to plaintiff's right to pursue any available remedies under Title 38 of the United States Code and the Veterans Health Administration regulations.

(2) Defendants' Motion to Dismiss Count V of Plaintiff's Amended Complaint is **GRANTED** and Count V of plaintiff's Amended Complaint is **DISMISSED WITHOUT PREJUDICE** to plaintiff's right to pursue any available remedies under the Privacy Act of 1974, 5 U.S.C. § 552a *et. seq.*